Good morning, Yarns. May it please the court, I'm Terri Rose from the Eastern District of North Carolina. My colleagues and I are here today to ask this court to vacate the sentence that were imposed by the district court and remand these cases back for re-sentencing. We make this request because the record shows that the district court in all three of these cases failed to consider each defendant as an individual before imposing sentence and essentially sentenced the crime instead of the individual. Each co-defendant here played a different role in the offense and the conduct that was involved in the cases and each had a different criminal history. These varying criminal histories and roles resulted in a different advisory guideline range for each individual defendant. Yet each defendant was given the same 140-month sentence on the Hobbs Act Convention, no matter what his advisory guideline range was. We recognize the district court can upperly vary from advisory guideline ranges, but that variance must be based on an individualized assessment of a particular defendant and his unique characteristics and his role in the course of conduct. What makes you think Judge Boyle didn't look at the employment history and the other things on each one of these and something different based up? Well, at least give them individualized consideration. To begin with, the court plainly stated that it did not believe the base offense level was appropriate and started out in those terms. Particularly in Mr. . . . they started out with Mr. Limas. Mr. Limas had the least advisory guideline range. His increase went up to 62 months because basically the court said, I don't like the offense level. I don't think defense level reflects what should be an adequate defense level for these robberies of convenience stores. The court then just proceeded on to say, what if I give them 140 months? What if I give them 180 months? There was no discussion about those individual defendants. I suppose he could have given them all this identical sentence. It's just what he said is the problem from your perspective that it appears to be non-individualized. But if he individualized it, he could actually give them this sentence. We don't argue that he could not have varied upwardly, but not in the manner that he did that. The court just said, I think this is what the base offense level did and then applied it to everybody. Mr. Limas went up 62 months. Mr. Gomez went up 15 months. Mr. Newman went up 3 months. They all each had a different criminal history, which would have been a different guideline range. For example, Mr. Limas was 63 to 78 months for his advisory guideline range. He ended up with 140 months. Mr. Gomez was 100 to 125 months. He ended up with 140 months. Mr. Newman was 110 to 137. He ended up with 140 months. I recognize that the court can say they disagree with the policy and that the offense level may not be what they think is adequate based upon the circumstances or for whatever reason. But it would have been a different matter if the court had have said, well, I'm going to increase this offense level by two levels and then look at all the individual characteristics and the individual criminal histories and what is pertinent to those people. What do you think is going to happen if we send it back? Well, we would hope. The judge is going to say I looked at each offense level and they come to 140 months, don't you think? I'm not trying to speculate on that. I'm just saying that that would be within its purview, wouldn't it? Well, I don't know that he could say each one of them is 140 months without giving some kind of reasoning why. We just didn't get any reasoning why. I don't like the offense level and it was a crime of violence and therefore they should all be at 140 months, which would have been different than saying I think the offense level needs to go up two levels and then we'll add a year to everybody. That would have been a difference, but it would still have been an individualized difference because it would still have been based on their individual guidelines. I recall, it seems like I read in the transcript, he said something to the effect that, well, if the appellate court won't put these guys back on the street, let them do it. Well, he did. He did. He asked the government at the sentencing if they could defend him basically if we came here. So we kind of all knew where we might be headed with what was fixing to happen. He had a sentencing in mind. He just wanted to know if the helping guy could defend his sentence he was given. He did ask him that. I guess he'd been properly advised and said, yes, if you do it right. Well, that was kind of the response. I think the government's response was if he could do it under 3553A as long as he specified his reasons, but we didn't get any specified reasons. I thought, as I recall the transcript at that point, Judge Boyle said, no, I'm done. I'm not giving you any more reasons. There wasn't a whole lot of discussion in either of these sentences. What more could I say? I've already done it, right? There wasn't a whole lot of discussion. Can I ask a question? Are you suggesting that, or are you arguing that it would be possible to give these three apparently very differently situated defendants the same sentence, that there would be an explanation that would explain why people who have very different criminal histories and different roles in the offense might actually all come out at 140 months? Not these three individual defendants. I would not say to the court that there's not ever a situation where you would end up with a group of co-defendants that all got the same sentence. I think that's plausible, and I think the law supports that. Not in this case, though, because I think these defendants were so different. For instance, Mr. Limas had a very minimal role in this situation. He had a very low criminal history, whereas Mr. Gomez got an enhancement for leadership. But I don't think you're saying that you couldn't get it. What you're saying is you don't think it's appropriate, but in terms of a legal review of an individualized assessment of the sentence, if the record showed the judge individually assessed the sentence and ended up with 140 for each, that would be a difficult case. Your argument is he didn't individualize these defendants. That's correct. Then you have, in answer to Judge Harris' case, you have the additional opinion that they shouldn't get it, but that doesn't mean it wouldn't be a legally sound decision by the trial judge to do it legally. I think there's... It may not be something you like. That's what that would do. That's not before us. I understand that. But I just want to make clear on that point that you're not saying it would be a reversible error, but it would seem appropriate to give a different sentence for each one. In this case, yes, sir. Yes. You can keep arguing if you want to. I just was checking to make sure everybody had asked all their questions. Well, at this time, I believe I will... Mr. Dubois would like to speak specifically to Mr. Gomez, given the great disparity that he had. Okay. Thank you, Your Honor. As the mate please the court, my name is Alan Dubois, and I represent Mr. Limus. I just wanted to speak specifically about him for a couple brief minutes. Who are you representing? I represent Mr. Limus. And the reason... Ms. Rose is representing... Mr. Newman. Mr. Newman. Who's got Mr. Gomez?  Is he going to argue? He's not going to argue today. He's arguing on his behalf. I can argue on his behalf or Ms. Rose can. Okay. But... Now, let me ask that. One of these individuals was not, at least appeared to be not as culpable as the other two. Who has that one? Me. You. But you're going to argue the one... It would seem like you would be the one that would be separated from the other two, at least in terms of the sentence that was given. Of course, the answer for all of them is that they weren't individualized. Correct. But ultimately, it's your client that appears to have been, if there is such a thing as being less culpable or not is. That's absolutely correct, Your Honor. And I'd sort of like to try to bring together your question about what might happen on remand and Judge Harris's question about whether this could be a proper sentence for any of the defendants. And the way I frame it is this. Your Honor, you're right. Legally speaking, a sentence of 140 months would be within the statutory maximum. But the procedure is important. And the reason the procedure is important is it focuses judges' attention on the proper considerations that Congress and the Sentencing Commission want judges to look at. And if you short-circuit that process by just jumping to a number without going through that process, you're going to miss those considerations. And if you do consider those... What I can't understand is why would Judge Boyle do it in this fashion? He's been a judge for a long time. He's not the first defendant. He's sentenced. He knows what this is. And I'm trying to figure out, is there enough here to say it's individualized? Because it's hard to believe a judge who's been there that long sentencing. He makes that fundamental. This is a very basic error that every trial judge knows he can fix. He can fix it very easy by just using the magic words and doing the magic consideration. It's just unusual. Or is this... I don't know. I don't want to take it further than what it is. But it just doesn't follow as to why this happened in this case. Your Honor, I can't presume to get inside Judge Boyle's head other than to say I've practiced in front of Judge Boyle for 20 years. And he... I'm not trying to make it a personal thing. No. And I guess what I'm saying... What was the rationale here? What I'm saying is I think you hit the nail right on the head. This was just a fundamental error. And we don't need to go into why it happened. We don't need to go try to parse what might have been unspoken by Judge Boyle. All we can do is go by what's on the record. And what's on the record is Judge Boyle said, the only thing I care about is that all y'all are going to get the same sentence because I think this guideline is too low. Let's just say that that was not an unreasonable position to take, that the base offense level was too low. He tried to address this issue in his head the wrong way by feeding everybody from the same spoon. That's not allowed. The law says you have to go through the 35-53 factors, which he did not do. And to briefly address the government's argument that, well, he really did do this sort of individualized consideration. He kind of viewed this as, well, I don't know if it was a bottom line. Maybe he went and tried to use what he might have considered to be common sense. He said, you got these guys, they are predators on society. Correct. They are something else out there, and he's going to give them every bit he can get to get them off the street. That's where that comment comes from. But the appellate judge won't let them out. Let them get out in the raw people again, which I'm not sure I agree. That's a fair statement. But I'm just trying to understand the rationale for it, that is there something here for individuals where the pattern of conduct itself indicates these are folks who just do not get it. They're out there doing every kind of thing over and over again to innocent citizens. Judge Boyle's point is he's trying to keep these streets safe, and that's kind of what sentencing is all about. That's correct. I see my time is up. May I have a moment to respond? Well, first of all, of course, no matter what this court does, these folks are not getting out on the street. They're going to have a substantial sentence no matter what happens. As far as what Judge Boyle might have been thinking, I think the only thing that's fair to do to him and to the defendants is to take him at his word. What he said was, I'm giving you all the same sentence because I think you all deserve the same sentence. Unfortunately, that was a legal mistake, and this case has to go back so that the judge can follow the proper sentencing procedure and give these defendants the individualized consideration to which they're entitled. Thank you. Thank you. All right, let's hear from the government. Good morning, Your Honors. May it please the Court, I am Shelika Kotya here on behalf of the United States. This is a case that demonstrates precisely what the Supreme Court demanded in Gall v. United States, that the guidelines range are simply a starting point. The district court must start with the guidelines range, but then . . . Is there any question that the judge must give an individualized sentence? No, Your Honor. I believe the court must . . . That's kind of what I view the issue here, is the question of whether or not he individualized. It does appear that Judge Boyle sort of . . . And I guess you can do it. You can start out and take a different approach, and approach it scientifically and come up with your conclusion and work toward it. It looks like he said, I'm giving all you guys the same stuff, 140 years. What I'm going to give you, it doesn't matter what you did, because you are just some terrible guys. And he did it. And then he turned to the prosecutor, which I don't know if it was you or not, but he turned to the prosecutor and said, can I do it? And he said, you can do it right. And Judge Harris said, went on and did it. Isn't there something wrong with that? In this case, no, Your Honor. And there's a reason for that. Before the district court came to that conclusion, that these defendants deserve the same sentence, that they all required a sentence of at least, I believe he said, 180 to 200 months as a total sentence. He went through the appropriate individualized assessment. He listened and understood the specific facts of this case. And the facts are that all three defendants are equally culpable for what happened. You have three defendants here, Limas, Gomez, and Newman. There were a series of five robberies over two separate days. That part I got. That's established. Yes, absolutely, Your Honor. It's the individualized assessment for the sentence that we have a problem with. That part we got. Oh, yeah. If you're looking at it and all you're doing is sentencing, you can make this crime. This is a terrible crime. I think the other side has already admitted it. But that's not the basis for individualized assessment is when you've got a terrible crime and you've got three people doing it, you don't just give them a sentence for the whole. The sentencing guideline says, look, look at these factors and consider all these things individually and look at what they've done in the past. And I don't know, maybe intuitively it says to me, if you have a base offense, that's kind of what you give to guys who commit a crime like this. Then you work toward these other levels of offenses, of a sentence based upon what you individually assess for each one of them. And that's the question we have here is, was that done? And I mean, the bottom line is if it wasn't and you have to go back, it's not like the world's going to end for you. You just go back and tell the judge and see if you can get the same sentence. I mean, this is not one of those cases where the end of the result is they're going to go free. Yes, Your Honor. It's just a question of what sentence they're going to get and if it, I'm not trying to get you to go this direction, but it doesn't seem like this is one of those cases that needs to be pushed to the nth degree. You may be right, Your Honor, and I don't think that this is one of those cases that you described, but what I'm trying to articulate here is what Judge Boyle or the district court made a qualitative assessment of these three defendants. He didn't look, he didn't accept the defense counsel's argument at Limas's sentencing hearing that he was less culpable than the other three. He looked at their particular individualized roles in each of those five robberies that occurred over two days. Did he talk about their criminal histories? He specifically inquired about Limas's... What about the other two? About the other two, he didn't. He, during Limas's sentencing hearing, did ask about the different guidelines range that each defendant was... Isn't it a problem that their lawyers weren't in the room when he did that? Your Honor, I believe the lawyers were in the room, but the defendants were not. I'm sorry, they couldn't speak, I'm just saying. Yes, they could not speak, and the defendants were not in the room during that earlier sentencing hearing. But I believe what was presented to the court and what we know that the district court considered is that each of those defendants was facing a different guidelines range. Now, after the district court had come to the conclusion that they were all guilty of similar conduct and that they were equally culpable, then I believe it was government counsel presented to the district court why the guidelines range came out differently for the four different co-defendants in this case. And he said that some of the defendants lacked criminal history, and that's why the guidelines range came out differently. Government counsel also pointed out to the district court, and the district court acknowledged that... I believe it was right before that, Your Honor. Yes, Your Honor. So I understand that, yes, the defense lawyer did point out that they had different criminal histories, but did the judge... It seems like what the judge said is, well, that's a fallacy. So how do we know that the judge actually considered and evaluated those different criminal histories? Well, this dialogue goes on for a couple pages. It starts with government counsel pointing out the different guidelines ranges that the defendants were facing. It started at the beginning of that with government counsel's argument about specifically why Limas's sentencing guidelines range was lower than the other defendants, that he had received the benefit of intervening case law, which had taken him from a criminal history, a higher criminal history category, he would have been a career offender, down to a criminal history 2. Is there any indication that the district court relied on that? Yes, Your Honor, there is. Where does the district court say, I'm paying attention to that factor? Your Honor, if I can direct you to Julian Pennock's pages 133 to 34. This is after he makes that comment about the fallacies of the guidelines range. And then at that point, defense counsel, Limas's counsel, starts articulating, trying to interject, saying, these defendants have different guidelines ranges, they have different roles. And the district court said, well, I know that, and I've certainly taken that into account and digested all of that in coming to the conclusion that the sentencing commission and the guidelines sentencing grossly underpunish and ignore the dangers of the crimes on sentencing. That's a total non sequitur, right? And I don't mean to sort of flyspeck the district court, but that's a total non sequitur. He's saying, I've taken into account that they have different criminal histories, but what I have decided is that the guidelines underpunish the base offense. The base offense level is too low. But it doesn't make any sense. The base offense level may be too low, but that has nothing to do with individual criminal histories. Well, I didn't understand the district court to ever refer specifically to the base offense level. I understand, but he said, right, the general punishment for this offense is too low. I'm going to push it up. But why does everybody end up at the same number? Where's the part where he says, even though they have different criminal histories, and you say this in the brief, the district court said, even though they have different criminal histories, the district court evaluated those histories and decided that, no, that's not quite right. Even though the histories come out with a different number, they all have basically the same criminal history. They're all basically similarly situated. But I don't see that here. I believe what the district court is saying here in taking this statement by the district court in context of the discussion that happened in the pages preceding that, he was making that evaluation. And I believe that the district court didn't expressly come out and say specifically that because of the criminal histories are the same, this is what I'm deciding. But what he's saying here, that I've taken that into account and digested that, after there has been a repeated discussion, a lengthy discussion, of the different guidelines ranges that these defendants were facing, and the different criminal history categories that they all possess, and the fact that Limas' criminal history category was significantly impacted by intervening for circuit opinion, which took him out of his career offender status. At that point... But that's the law. Yes, Your Honor. The Davidson and Leland cases, those are not part of his individualized assessment. He doesn't get a choice on that. So you don't get to come in and say, well, you got the benefit of these opinions, these courts have come down, so I'm gonna forget about this business and give you a sentence like everybody else. I mean, that's the law. That's different than criminal history individualization here. And we can start with a proposition. Everybody can agree. This is a terrible thing. Who in the world wants someone that goes in and rob kangaroos express, especially in the blatant open way these guys did? They were just cavalier about it. Until finally we're caught. That's a whole different ballgame. Judge Boyle is right. We need to figure out, these are terrible people, but that's not sentencing. Sentencing goes to individualized consideration of each person. And there's a way to do it. And I don't, I think probably legally he could figure out a way to give him the same sentence. I think, I'm just saying that. But at least it needs to be articulated. That's the spirit of the guidelines. I think what, Judge, what the district court here was focusing on was 3553A6, which specifically talks about preventing unwarranted disparities amongst defendants with similar records who are convicted of similar conduct. What happened to the fourth defendant in this case? He received a lower sentence, Your Honor. And how could he have been focused? I mean, if the point was everybody needs to get the same sentence, how do we account for the fact that the fourth defendant got a much lower sentence? Well, Your Honor, in this case the fourth defendant was only the driver. He never entered... This is totally arbitrary. I'm sorry, Your Honor. It just seems totally arbitrary that the judge would have, I mean, if we're understanding what you just said, that the point is there can be no disparity. Everyone who commits the same crime has to get the same sentence. But then the fourth defendant gets a much lighter sentence, so that I can't even figure out what the rationale is anymore. Well, I think the district court, and again, that fourth defendant's sentence is not before us today, but from looking at that case, what I understand is that defendant, Mr. Morales, was only the driver. Now, he did supply the firearms, but I haven't looked at the sentencing transcript. Yeah, and I haven't looked at the transcript of exactly what happened during that sentencing proceeding. But what I do understand is that he was the driver, and it's similar... Isn't that kind of sly? He did supply the firearms? Yes, Your Honor. He supplied the two firearms that were used in all five robberies. That's really bad, isn't it? I mean, you would think that would be the person you'd lay it on. Yes, Your Honor. But again, I don't know what arguments were articulated at that sentencing hearing and what the district court... And I'm not saying... I don't think we're saying how ultimately it would come out. What we're concerned about is there something the guideline says, and, you know, it does trouble me that the judge would take... That little statement about the appellate court really threw me off. I couldn't get that one. It basically says, I'm going to give them what I want to give them, and you won't let them out on the street. I mean, that's something you don't expect a judge to say. You expect someone from off the street to say something like that. Not a lawyer, not one who understands the law, understands that a court, when a person is sentenced, it's by the law. And there's a policy commission that looks at these offenses and assesses what is an appropriate sentence for a person who commits this crime. And then it gives you factors that give the judge discretion to move there. So it's a legal way to do it. So when a judge gives a sentence, whether the person gets out or stays in, they're not putting folks out in the street. They're doing it in accordance with the law. That's what lawyers and judges do. You don't get up and say something that somebody on the street would say, is, oh, they'll put them back on the street. That's offensive. And it probably offended the prosecutor, too, to hear something like that, because you know that it has to be done a certain way. That helps to keep things fair and legal, and it makes our courts look good when we do it right. And I submit to you, I think Judge Ball may have not done it quite right here. But it doesn't put you in such a bad position. I'm saying it simply says, go back, and judge, just calm down a little bit and do it the way you're supposed to, and then ultimately let it come out. And then individually, if you want to get out and say your First Amendment rights about how things are, do that, but don't do it in the courtroom. It makes our courts look bad when we do that. Don't you think? Don't answer that. Don't answer that. I'm not going to put you in that position. Respectfully, Your Honor, I do disagree with you on whether or not it was done. And if we look specifically... But you've only given us individualized... You've only talked about the offense themselves and how bad they are, and that was so many. And we've all agreed that the offense that was convicted of, they're just horrible. And if you just could sentence them on that, and it was the old... Nobody would argue that he couldn't do it. But that's not the law. The law is you've got a base offense, a base level of what you would sentence the individual. And now you individualize assessments. And what the record seems to be devoid of is that individual assessment of each one of these defendants. Well, if we start with Mr. Limas, I believe that there was an individualized assessment of him and his specific role in these offenses. And in deciding to upwardly vary that 62 months to a sentence of 140 months imprisonment. I believe what the district court looked to here, and this is specifically from the record, he emphasized that during that first... Well, the first completed robbery, not the attempted robbery, on October 27th, that Limas was charged with going in and getting the money out of the register. And he took that as an opportunity to then steal more supplies to fuel his related drug activities. Now, the district court commented that he found that particularly offensive. He then continued later on that same page. That he would take more money to fuel a drug activity. Not money. He took supplies in addition to money from the robbery. He took that as an opportunity to steal other items to fuel his other drug activities. Then later, he notes that on October 30th, which was an attempted robbery where Gomez and Limas were ultimately arrested, that he walked into that store. He said, this gentleman right here walked into that store guns-a-blazing, I believe is the term that he used. At that point, he was speaking specifically, not to the crime as a whole, what that defendant did, the defendant in front of him. He did not walk in guns-a-blazing, did he? I mean, were they... It's sort of like a metaphor, and I don't know how much we can... Yes, it might be a metaphor, but what is clear is that they were both, Gomez and Limas, at that final robbery, that attempted robbery, possessed firearms. But that's already accounted for, right? In the guidelines range? Yes, Your Honor, but I believe the brandishing of the firearm is what was not accounted for. That's because of the case law, right? It couldn't be. Yes, absolutely, but in this case, where the district court found that the guns were, in fact, brandished, and at the robbery on October 27th, in fact, an individual, the store clerk, was pistol-whipped with that firearm. Now, the Supreme Court's opinion did affect the advisory guidelines range, and it affected the mandatory minimum sentence. But I think this district court would have been well within its discretion to have varied to 84 months on the 924C count if he had supported it with the finding that these defendants had actually brandished. And repeatedly, throughout all three sentencing hearings, he comments on the fact that someone was pistol-whipped, that these were very violent, that these firearms were brandished. The district court did make that finding. Here, I think, with Limas's, going back to Limas's sentencing hearing, the district court did make an individualized assessment, did support its decision to vary upward, did do that in light of the factors in 3553A. He considered the nature and circumstances of the offense. We all agree that he commented at length about the violence of these specific robberies. The district court also commented about Limas's role in the offense, as we've already discussed. The district court talked about the history and characteristics of that specific defendant. He questioned him about his items in his pre-sentence investigation report, about his prior gang affiliation, about the fact that he was expelled from school. He discussed those items with him. Are you arguing that it's just a coincidence that all three defendants ended up at the same point? No, absolutely not. I believe what... That these were individual, really individual assessments, and coincidentally, each one of them got the same sentence? I do think the district court made an individualized assessment. And I think during Limas's sentencing hearing, he ended up looking at these three defendants, he heard testimony about the crime spree result, and each defendant's role in that crime spree, and then decided that they were all guilty of similar conduct. And under 3553A6 came to a conclusion that a sentence of 180 to 200 months was an appropriate sentence for these defendants for those crimes. That's sort of a separate question, apart from the individualization. Does it strike you as procedurally problematic, then, that he sentenced two defendants before their sentencing hearings, when their lawyers were unable to...? I mean, if he made that decision in Limas's sentencing hearing, isn't that a bit of a problem for the next two defendants who walked in with their sentence already imposed? If the district court had not articulated a basis for his imposition of a sentence during the next two defendants... Now, I agree with you that, you know, in Gomez's sentencing hearing, I believe the district court tried to incorporate its rationale, the rationale that it had not articulated before that defendant. And we believe that that was not proper. But the district court didn't rely solely on that incorporation by reference. He continued and discussed what... Discussed Gomez's past, his criminal history, all of his individual characteristics? He doesn't... He does not. But he does reiterate the factors that he had articulated in front of Mr Limas at his sentencing... Which had nothing to do with Mr Gomez, except for the offence, yes, the crime, the nature of the crime. But anything he may have said about Mr Limas's... Whatever it was, his past gang affiliations, the part where he said, by the way, this isn't a test, don't worry about your answers, which may have indicated that it was not actually part of the sentencing decision. But in any event, anything he might have said about, say, Mr Limas's past gang history, I mean, obviously that doesn't translate to an individualized assessment of Mr Gomez, right? Oh, certainly. That would not translate to Mr Gomez. But what the court did do during Mr Gomez's sentencing hearing is he expressly accepted the government's proffer of evidence as to Gomez's role in the offence. That he was... I guess I'm sort of giving you, for the sake of argument, that there was an assessment of the offence and maybe even individualized role in the offence. But what about criminal history, other individual characteristics, the past? Nothing, right? Zero? Yeah, there was nothing on the record, specifically in Gomez's sentencing hearing, where he spoke specifically as to Gomez's prior convictions. And Newman? Anything on Newman? In Newman's sentencing hearing, now, the district court, again, didn't identify specifically what was listed as prior convictions, but did note that a basis for his decision was the fact that he said, this defendant's criminal history and recidivism. Reflecting that he was considering his criminal history and the fact that his recidivism, Newman had a prior felony breaking and entering conviction and misdemeanor breaking and entering convictions. So he did reflect that that was something that he considered, while not specifically identifying the prior conviction that he was referring back to. You know, in a scientific approach, you typically would seek out a conclusion and you would try to find out hypotheses and null hypotheses in terms of how to reach it. In the legal world, at least what I understand from the sentencing guidelines, it seems to me, and tell me if you differ on this, that you don't start out with what you already have, a sentence in your head, and figure out reasons for that sentence. You start out with the base, and then you work toward the sentence. And doesn't it appear that more of the formal was done here, that, in fact, a sentence was sort of articulated? And if there is a basis, an individualized basis, it was only to substantiate the fact that that conclusion was already made in the first instance. Your Honor, I see that my time has run out, if I may respond. I disagree. I don't think that's what happened here. I think the district court did start with the guidelines, as is required under Gallup v. United States. And then I think the district court, after engaging with the defendant and continuing to hear about the exact offense, came to a conclusion, after hearing the guidelines range that his co-defendants were facing, that a sentence, a total sentence of 180 to 200 months, was necessary to meet the purposes of sentencing. And then the court came to a conclusion that 140 months was appropriate on count one, based on the specific offense conduct, each defendant's role in that offense, and then based on their propensity to commit future crimes and the need to protect society. I believe that's the conclusion the district court came to, and we'd ask that you affirm the judgment of the district court. Thank you. Mr. DuBois. Your Honor, just to address Judge Wynn's last point, I'd like to point the court's attention to a 10-circuit opinion that came out two days ago. It's called United States v. Sabian Umana. I'll file a 28-J letter after this, but it addresses Judge Wynn's exact point. In that case, the 10-circuit held that it's air for a court to first come up with a number and then backfill with its factual findings. The court's exact quote was, the district court, in this case, failed to follow the order of operation, starting with the conclusion about the appropriate guideline sentence, before backing into factual findings to support its conclusion. This was air. That's exactly what happened here. The judge came up with a number of 140 months, and then I don't think it really even justified it, but it clearly started with the number before following the proper order of operations. Even if we find that to be the case and we send it back, what's going to happen when it goes back? I mean, you simply just use different words and say, I'm starting out with the base, and I'm going to work up to this. Well, Your Honor, I'm not nearly as confident that that's what will happen. As Sabian Uman actually talks about that, and they say, if you go through it in the proper order, you might very well end up at a different place, because I think if Judge Boyle's attention was focused properly on the facts of the case that differentiate Mr. Limas from the other defendants, he is a very good and experienced enough judge to factor that in and to reach a conclusion that might very well differ from something that didn't take those factors into account. Is this a case that fits within a category that we would send it to a different judge? I don't think that's necessary, Your Honor, at all. We would be more than confident, I think, and I think my co-defendants would be more than confident to have this sent back to Judge Boyle. We don't think this is a question of any kind of animus that Judge Boyle had for these defendants. We just think he followed the wrong procedure. We're very confident that if we get him back in front of him and he follows the right procedure, that an appropriate sentence will result, and that's what we ask this Court to do.
judges: William B. Traxler, Jr., James A. Wynn, Jr., Pamela A. Harris